UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       :     Docket No. CR-05-223
                             :     (RJL)
          Plaintiff,   :
                             :     June 1, 2010
                             :
v.                         :     3:00 p.m.
                             :
ISIDRO BENAVIDES,          :
                             :
          Defendant.   :
. . . . . . . . . . . . . . . . .

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          SHANA LAVERNE FULTON
                         U.S. Attorney's Office for the
                           District of Columbia
                         555 4th Street, NW
                         Washington, DC 20530

For the Defendant:          SHAWN MOORE
                         Federal Public Defender for D.C.
                         625 Indiana Avenue, NW
                         Washington, DC 20004

Court Reporter:             PATTY ARTRIP GELS, RMR
                         Official Court Reporter
                         Room 4700-A, U.S. Courthouse
                         Washington, D.C. 20001
                         (202) 962-0200

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

```
 1              P R O C E E D I N G S

 2              COURTROOM DEPUTY:  Calling criminal case 05-223, the

 3   United States of America versus Isidro Benavides.  Would counsel

 4   please come forward and identify yourself for the record?

 5              MS. FULTON:  Shana Fulton for the United States.  Good

 6   afternoon, your Honor.

 7              THE COURT:  Welcome back.

 8              MR. MOORE:  May it please the Court, Judge, Shawn Moore

 9   on behalf of Mr. Benavides.

10              THE COURT:  Welcome back, Mr. Moore.  Well, Ms. Fulton,

11   the Government has asked for a longer period of time than

12   strikes the Court as fair under the circumstances, especially

13   considering that, as I understand it anyway, the Government

14   isn't intending to seek any enhancements, that this victim may

15   be instrumental to the resolution of; and the victim in this

16   case could provide a statement which the Court would be willing

17   to extend this sentencing process for a few weeks to give her a

18   chance to make a statement under oath.  It has to be under oath.

19              She could go to the U.S. Embassy down in whatever major

20   city is closest to her.  I don't know where exactly she resides.

21   I think she is in Chile.

22              MS. FULTON:  Yes.

23              THE COURT:  She could go to the appropriate Embassy

24   office and make a statement under oath.  It would have to be

25   reduced to writing obviously, and then you would have that
```

1    available at the sentencing to submit hopefully before we had

2    the sentencing so I could review it and you would have the

3    benefit to make any reference to it that you would like to under

4    the circumstances; but I don't think at this point it is fair to

5    the Defendant to extend this another 6 or 8 weeks in order to

6    accommodate a trip that may or may not occur depending upon the

7    circumstances, and she has had a long time to get here as it is.

8           So that's why I issued the order that I did. I would

9    like to pick a date within a few weeks.

10          MS. FULTON:  Your Honor, if the Court doesn't mind, I

11   can just clarify some of the Government's position and the

12   issues here.  With respect to whether or not the Government is

13   going to I guess advocate for the enhancement, at this time the

14   Government is intending to do that.  In terms of how the victim

15   plays into that, we were intending only to present the victim

16   for the Victim Impact Statement.

17          With that said, it is a little unclear to me from the

18   defense counsel what they are challenging in terms of the basis

19   for the enhancement.  The Defendant's daughter, she is planning

20   on attending and testifying and since she is relied upon by the

21   Probation Office for the enhancement, there is her testimony and

22   that's separate in terms --

23          THE COURT:  Hold on now.  Let me stop you there for a

24   second.  I have had the benefit of being able to discuss this

25   with Mr. Penders just before we got out here.  My understanding

1     from talking to him and, of course, he is here if I

2     misunderstood him in any way to clarify the record further, my

3     understanding from talking to him is that the Statement of the

4     Offense which the Defendant acknowledged and pled guilty to

5     includes within it a factual statement to the effect that on

6     more than one occasion, or certainly it could be read to mean

7     that on more than one occasion, the Defendant had sexual

8     relations with this minor.  And that alone, if the Court were to

9     so interpret it, would be enough of a basis for an enhancement

10    of five levels.

11          MS. FULTON:  The Government agrees with that.  However,

12    what we are not clear about is whether the defense challenges

13    that.  If the defense does, then I think that there would need

14    to be some type of live testimony either from the victim -- we

15    are not saying necessarily we would present her since we do

16    think that it is contained in the Statement of Facts that the

17    Defendant did agree to, but at least with respect to the

18    daughter, the daughter is really only here for the enhancement

19    purposes for the Court to consider.

20          So my understanding from defense counsel was that

21    defense was challenging every aspect of the enhancement so

22    that's how the Government has been proceeding accordingly.

23          THE COURT:  Yes, but now you are using that word

24    "Government" in a kind of a fulsome way, understandably, I might

25    add.  Your colleague who negotiated that Statement of the

1    Offense also negotiated the Plea Agreement.

2              MS. FULTON:  That is correct.

3              THE COURT:  Not you, Mr. Yoon, and he did so with that

4    statement in there and he did so calculating it to be where it

5    is now, which is 57 to 71 I believe months.  So the Government,

6    excluding you, the Government made its bargain.

7              As far as I can tell, the Government had at its

8    disposal if it wanted to argue it that he had had multiple

9    encounters with this young lady and, therefore, would be

10   entitled to an enhanced calculation, but they didn't do that.

11   The calculation that was placed in the Plea Agreement, unless my

12   recollection is wrong, is the very one before the Court, 57 to

13   71.

14             MS. FULTON:  That is correct, your Honor.

15             THE COURT:  So the Government can't have -- my point is

16   very simple, Ms. Fulton -- the Government can't have it both

17   ways.  If the Government makes a deal with the defense and if

18   for whatever reason the Government may have, again present

19   company excluded, miscalculated, the deal was made.  The

20   Defendant with his counsel's assistance obviously made the deal.

21   The deal was put before the Court.

22             The Plea Agreement carries with it an obligation on the

23   Government's part to stand by that calculation, although the

24   Court is not bound by it, and to advocate for a sentence within

25   the Guideline range.

1          So you want to have it both ways, and I am not sure I

2     am going to be able to let you do that.

3          MS. FULTON:  Well, my understanding from the agreement,

4     your Honor, is that no agreement was struck with respect to that

5     enhancement.  The only agreement that was struck with respect to

6     the enhancements that in there.  I did have a conversation with

7     defense counsel about it and my colleagues to make sure that

8     this was -- my understanding was the correct understanding and

9     that is my understanding.

10          I do understand the point that the Court is making.  I

11     know I keep saying the Government.  This was called to my

12     attention after -- once I joined the case.  Of course, I was not

13     part of the original negotiations.

14          THE COURT:  I understand that.

15          MS. FULTON:  But that is my understanding is that the

16     agreement does not preclude either side from arguing for or

17     against an enhancement, and the agreement definitely does not

18     include an agreement on that particular enhancement, not meaning

19     that it doesn't apply at all.  It just means that there was no

20     agreement with respect to whether it should apply or not.

21          THE COURT:  I don't have it in front of me, but my

22     recollection is that the Plea Agreement had a calculation of the

23     Guideline range.

24          MS. FULTON:  It does, but there is a sentence right

25     before it -- and I do have it if the Court would like to see

1    it -- that actually underlines because I believe this may have

2    been an issue previously in other cases that states:  However,

3    nothing in this agreement is to be read as precluding either

4    party from arguing for or against the applicability of any other

5    specific offense characteristic and/or adjustments to the

6    Defendant's base offense level that is not specifically

7    referenced in the agreement.

8            It is underlined,  and both Government and defense

9    counsel signed this agreement as did the Defendant.

10           THE COURT:  Well, I will tell you what.  I am going to

11   interpret that to mean any type of argument relating to the

12   facts that are contained in the Statement of the Offense.  The

13   Statement of the Offense includes within it facts which, in

14   theory anyway, could be a basis for an enhancement that he pled

15   guilty to.  It seems to me that that would be unfair to the

16   defense to turn that into the basis for enhancement here.

17           Now, the daughter's situation is a completely different

18   thing.

19           MS. FULTON:  Yes.

20           THE COURT:  That came up at the eleventh hour and 55th

21   minute --

22           MS. FULTON:  Yes.  The daughter is separate.

23           THE COURT:  -- as a completely different deal.  So I am

24   going to take off the table any argument for enhancement based

25   on the events that occurred in Chile.  They are just off the

1   table.  If the Government wishes to pursue that, I am not going

2   to permit you to.  So you will have a ruling that if you want to

3   take it upstairs some day, well, go for it.

4           MS. FULTON:  And I may have to, your Honor. No offense,

5   of course, to the Court but the Government does oppose that.

6           THE COURT:  Mr. Moore, of course, like you and like me

7   became aware at the eleventh hour and 55th minute of this other

8   allegation.  The allegation, of course, is over 40 years old,

9   never been before any tribunal, never been subjected to

10  Cross-Examination or even under oath.

11          Mr. Moore and you and I all know about it only as a

12  result of Mr. Penders having a conversation with the Defendant's

13  daughter, and obviously she has indicated a desire on her part

14  to come here.

15          Whether or not the Government intends to put her on the

16  stand, I don't know; and I guess the Government will make that

17  decision at the time of the sentencing itself.

18          MS. FULTON:  The Government right now is planning on

19  presenting the daughter because since she is a basis from the

20  Probation Officer's Report.  What the Court wants to do with her

21  testimony, of course, is up to the Court; but since she has been

22  alleged as a basis for it, it is the Government's position that

23  the Government pretty much needs to present her for that.

24          THE COURT:  You mean under oath?

25          MS. FULTON:  Under oath, yes.

1            THE COURT:  And subject to Cross-Examination?

2            MS. FULTON:  As a witness, not a victim.  Just to

3    present a statement.  We do believe that she could be subject to

4    Cross-Examination if necessary because she is here as a witness.

5    Then, of course, it is up to the Court to determine whether or

6    not what -- if she I guess presents enough information for it to

7    be a basis for the enhancement.

8            I believe the Government's bigger  concern right now is

9    the Court's earlier statement about not allowing anything in the

10   Statement of Facts or what the victim would say in an Impact

11   Statement to factor into the sentencing of the Defendant.  So

12   that I think would be a bigger concern right now, particularly

13   since the Defendant agreed to that Statement of Facts and the

14   point of the Statement of Facts is supporting sentencing

15   decisions including enhancements.

16           So right now the Government would be precluded from

17   being able to present any of that information.  That actually is

18   about the offense in question.

19           THE COURT:  Well, now, the Government in the form of

20   Ms. Schmidt and Mr. Yoon have never ever indicated to this Court

21   any intention to seek an enhancement in this case ever, and the

22   only time enhancement ever was discussed, ever was when Mr.

23   Penders had a conversation with the Defendant's daughter; and

24   prior to that the thought of enhancement was never raised at any

25   time by any of your predecessors in this case.  So as far as I

1    am concerned --

2         MS. FULTON:  Well, I would say particularly to the

3    Court, let me put that way.

4         THE COURT:  I don't want to quibble with you, but I am

5    telling you my recollection for what that's worth.  We have

6    transcripts. So the Government can't have it both ways as far as

7    I am concerned, and I am not going to entertain arguments on

8    enhancement based on what's in the Statement of the Offense and

9    based on what a Chilean minor may have to say in her Victim

10   Impact Statement.

11        So I will give you two weeks to get it in.  You can get

12   your statement in.  She has got two weeks to send it.  It has to

13   be under oath, and obviously it has to be in English.  So she

14   can give it the Spanish.  I assume she speaks Spanish.  She can

15   give her Victim Statement however she wishes in Spanish, but the

16   Embassy is going to have to translate it into English and she is

17   going to have to sign it under oath and get it up here.  You

18   have got two weeks to get it up here, and then the sentencing

19   hearing will be the following week.

20        MS. FULTON:  Your Honor, if I could just also make the

21   record for the Government because I do suspect that an issue

22   will come out on this, with respect to the victim and her

23   ability to get up here, the problem right now is a passport

24   problem.  Her passport has expired.

25        We have been informed that for her to get a Chilean

1      passport it will take 15 days.  Of course, under the statute,

2      Section 3771, 18 U.S.C. 3771 the Government has to make best

3      efforts to have her here and included as part of the process

4      including in person.  So those are the efforts that are being

5      made.  That is why we asked for an extension.

6            My understanding now is since the Government made its

7      Motion To Continue, we can now I guess reduce the time estimates

8      of 4 to 6 weeks in order to get that passport; and then after

9      she gets the passport, then she would need to get a visa which

10     is what the additional amount of time would be for.

11           So in terms of presenting a statement, then, of course,

12     you know, the Government will do what it has to do, but in terms

13     of the victim's rights under the statute, that is something

14     independent that the Government -- independent of what the

15     Government has to present with respect to sentencing factors

16     under Section 3553,  and so the victim's rights -- the

17     Government is to advocate for the victim's rights. That is, of

18     course --

19           THE COURT:  Yes, but let's not conflate --

20           MS. FULTON: -- to be --

21           THE COURT: Ms. Fulton, when I start, you stop.  That's

22     how it works in this courtroom.  Do you understand?

23           MS. FULTON:  Yes, your Honor.

24           THE COURT:  When I start, you stop.  Okay.  You got it?

25           MS. FULTON:  Yes.

1          THE COURT:  Very good.  You are conflating two things.

2   All right.  You shouldn't do that for the record.  Her presence

3   in this room has nothing to do with enhancements in this case.

4   Nothing.  Her presence in this room from the Government's

5   perspective is satisfaction of the Victim's Rights statute so

6   let's keep that very clear.  She is not being flown here

7   ostensibly or intentionally by the Government to assist it in

8   the enhancement argument at all.

9          MS. FULTON:  That is correct, your Honor.

10          THE COURT:  Very good.

11          MS. FULTON:  The Government agrees.

12          THE COURT:  So let's keep that clear.  What I am

13   suggesting to you since her presence here is moot with regard to

14   the enhancement issue and because this case has been continued

15   more than enough for the purposes of the Court's perspective as

16   to fairness to this Defendant, she can submit a Victim Impact

17   Statement.  She has got two weeks to get it done.  Whether she

18   is able to be here in any event and subjected to -- and speak to

19   the Court and be subjected to questioning, that's a whole

20   separate question.

21          If you can get her here, good.  Fine.  Have her come,

22   but I am not going to -- in my sense, it is not fair to this

23   Defendant to make him wait another 6 or 8 weeks to have a

24   sentencing in this case.  So I have already ruled on the issue.

25   I am not going to retrench that.

1        Now, with regard to the daughter, that's a separate

2   issue.  If she is being brought in here to assist the Government

3   to make its enhancement case, she is welcome to come, but she

4   has to take the stand and she has to be subjected to

5   Cross-Examination, especially considering that this is an

6   allegation  over 40 years old that's never before been raised in

7   any tribunal at any time.  So I will just leave it at that.

8        MS. FULTON:  She understands that.

9        THE COURT:  Okay.  Mr. Moore, you haven't got a chance

10  to say much.

11        MR. MOORE:  No.  I don't have too much to say other

12  than with respect -- the Court has ruled with respect to the

13  victim.  I would just simply note in support of the Court's

14  ruling that at the time the acknowledgements with  Mr. Penders

15  pursuant to his report were filed neither side filed any

16  objections to his report so there was not an argument by her

17  predecessors or whoever was representing the Government at the

18  time Mr. Penders prepared his report, there was no objections

19  filed, nothing indicating that there should have been an

20  enhancement with respect to the child victim.

21        So there was an acknowledgment on the record as to

22  satisfaction or accuracy of his report and --

23        THE COURT:  And you would agree --

24        MR. MOORE:  -- I would posit that in support of the

25  ruling that the Court has made.

1          THE COURT:  And you would agree with me, would you not,

2    Mr. Moore, that one could in theory review that statement and

3    make an argument at least that there was more than one, I am not

4    saying it is a fact, I am saying an argument that there was on

5    more than one occasion sexual relations with a minor?  One could

6    have made that argument. Her predecessors could have made that

7    argument to Mr. Penders.

8          MR. MOORE:  Yes, sir, and could have asked for the

9    enhancements.

10          THE COURT:  But they didn't.

11          MR. MOORE:  Yes, sir.  With respect to the daughter, we

12    have filed objections and I suppose the points may be more

13    testimonial points, but I would say that it strikes me that we

14    are entering a due process issue in terms of this being used,

15    these allegations being used to enhance the sentence against Mr.

16    Benavides.  And by analogy I would say, for example, we don't in

17    count, in Federal Court, we don't count convictions over

18    15 years normally when we are computing points for criminal

19    history.

20          With respect to impeachment by prior convictions, we

21    go -- we don't count convictions normally over ten years.  So I

22    think those reflect a concern about using conduct that is old

23    in terms -- with respect to a Defendant.  I will make those

24    arguments again once we are here, but I don't want to have any

25    surprises to anybody as to what I am going to be saying in

1    addition to questioning the daughter, which is something I don't

2    particularly relish, but I am going to go after her if I have to

3    much as we have a trial.  That's my job with respect to Mr.

4    Benavides.  I think there is some fertile ground there, but I

5    won't take up any more of the Court's time.

6         THE COURT:  So you would agree with the Court

7    apparently that if she is going to appear here, that is, the

8    daughter, she is going to have to be subjected to

9    Cross-Examination?

10        MR. MOORE:  Judge, I think that's only fair given there

11   is no paper trial, no record, no prior proceedings, no previous

12   sworn or recorded testimony that the Government could offer, the

13   prosecution could offer in support of what she says.  She is

14   coming in simply to say what she says, to make verbal

15   allegations without the backing of any court records, any social

16   services records, anything of that nature.

17        I think it is only fair to Mr. Benavides that he have

18   the right to confront her given the posture of how these

19   allegations are going to come before the Court.

20        THE COURT:  Yes.

21        MR. MOORE:  Judge, I will leave it at that.

22        THE COURT:  Very good.  Mr. Penders.

23        PROBATION OFFICER:  Yes, your Honor.

24        THE COURT:  Come on up.  You have indicated that you

25   have had a chance to discuss this situation with this woman who

1    is his daughter; is that right?

2              PROBATION OFFICER:  Yes, your Honor.

3              THE COURT:  And was that conversation in person or over

4    the telephone?

5              PROBATION OFFICER:  It was over the telephone, your

6    Honor.

7              THE COURT:  All right.  And I assume there was no

8    transcript of that statement, was there?

9              PROBATION OFFICER:  No transcript.

10             THE COURT:  All right.  Were you planning on doing up

11   like a write up of it to make it an addendum to your report in

12   some way, shape or form?

13             PROBATION OFFICER:  Paragraph 7 A of my report would be

14   the basis that we would use and rely on.  I believe that's a

15   summary of the interview that I conducted telephonically on

16   April 13th of this year.  As there is no transcript, that's

17   probably the best recollection that I can have being that it is

18   almost 60 days ago at this point so that will stand for the

19   Probation Office with respect to that interview.

20             THE COURT:  All right.  And she wasn't planning on, at

21   least as far as you know, she wasn't planning on issuing any

22   statement or anything like that I mean other than appearing

23   here?

24             PROBATION OFFICER:  No.  I informed her when I was

25   speaking with her that I couldn't hold this information as a

1    secret, that it would be divulged.  If it was going to be

2    divulged to the Court, then both parties would be able to review

3    it and, if it was going to be considered by the Court, then

4    everybody would actually have to be able to review it; and she

5    was okay with that and understood that it would actually be part

6    of the record here in this sentencing.

7           THE COURT:  All right.  Very good.  Mr. Moore, have you

8    had a chance to see that addition?

9           MR. MOORE:  I did, Judge.  Mr. Penders provided the

10   revised version to both parties.

11          THE COURT:  All right.  Well, obviously considering

12   that the effect on the Guideline range is as dramatic as it is,

13   36 plus four so almost three-and-a-half years on the bottom line

14   of 57 to 71 so it would be 97 to 121, that is a very substantial

15   increase in the calculation if the Court were to find, again I

16   stress the word if, the Court were to find by the appropriate

17   standard that that had occurred.

18          I think Mr. Moore raises an interesting appellate

19   issue, potential appellate issue, that is, that I think Ms.

20   Fulton would be wise to talk to her appellate people about which

21   is the use of allegations that old, especially when they were

22   never the basis for any type of a conviction or any type of a

23   finding by any tribunal anywhere.  40 years is a very, very long

24   time by any standard to say the least, and for the Government to

25   wish to use that here without question, especially if the Court

1   were to find that the appropriate standard was met, would be in

2   essence to create a rather substantial appellate issue from any

3   sentencing in this particular case.

4          And it would probably be prudent for the U.S.

5   Attorney's Office, as I am sure the Public Defender's Office

6   already has begun the process of  looking into that and

7   researching it.

8          Clearly I will have questions along those lines at the

9   time of the sentencing of the case.  So it probably would

10  behoove both sides to be prepared to answer questions like that

11  on that occasion.

12         So you can have  until the 15th of the month to submit

13  your Victim Impact Statement.  It must be under oath and in

14  English obviously.  I don't speak Spanish.  She can give it in

15  Spanish, but it has to be translated into English and subscribed

16  to her under the penalties of perjury. Of course, if she can be

17  here on the 18th, she is more than welcome.  I am going to set

18  the sentencing for the afternoon of the 18th of June at

19  3 o'clock.  Are you available that day, Mr. Moore?

20         MR. MOORE:  I am available, your Honor.

21         MS. FULTON:  Your Honor, if I may, I guess two issues.

22  First, the daughter of the Defendant, her husband who is a

23  Federal Government employee, apparently he will be home for the

24  first time in years between June 17th through June 27th.  So she

25  has asked if I could request the Court not schedule it then

1    because she, of course, would have to make a trip to Washington,

2    D.C. Of course, she would understand if she would have to be

3    here.

4            With respect to the victim, I know the Court is asking

5    for her statement to be under oath.  I am not sure of the

6    mechanics of doing that with the Chilean Government and  how

7    that would -- we could actually do that.  I don't think it is

8    required under law that it be under oath.  We, of course, can

9    attempt to do that.  I just at this time without consulting with

10   the Department of Justice be able to say affirmatively yes

11   100 percent that her statement could be under oath because I

12   honestly do not know  since we are dealing with a foreign

13   government and they have their own oaths and I don't know how it

14   is done.

15           THE COURT:  I certainly would prefer it to be under

16   oath, but if she can't get it done or they -- I should say if

17   they can't get it done under oath, then obviously you got to do

18   what you can do under the circumstances, but its value is a less

19   value than a statement made under oath.  So that's common sense

20   really.

21           So if she can't do it under oath, so be it.  If she can

22   do it under oath, it will have more value in the Court's eyes.

23           MS. FULTON: And I just want to clarify for the record,

24   your Honor, just to make sure I understand the Court's position

25   on this is that nothing in the Statement of Facts can be used

1    for consideration for an enhancement? I guess that would be the

2    Government's question.  I think that's separate from what the

3    victim says in her statement because she can say pretty much

4    anything she wants to in her statement.  She may say something,

5    she may not that could support enhancement; but in terms of what

6    defense has already acknowledged, I guess would also be a

7    question.  My understanding is the Court will not consider that

8    at all, the Statement of Facts?

9         THE COURT:  I am saying the Government can't have it

10   both ways and if the Statement of the Offense as it was

11   constructed and the Defendant agreed to it and as it was the

12   guideline calculation that Mr. Penders calculated, it was based

13   upon that, the Government had no objection to that calculation

14   under the circumstances and indeed it was consistent with the

15   Government's own calculation in the Plea Agreement, it seems to

16   me the Government cannot have it both ways now after all this

17   time.

18        So I am not going to entertain arguments based on that

19   Statement of the Offense for any enhancement.  The only

20   enhancement argument I am going to entertain relates possibly is

21   to his daughter's eleventh hour and 55th minute revelation that

22   Mr. Penders happened upon.  That's the only one I am going to

23   entertain on that date.

24        MS. FULTON:  Of course, for the record, the Government

25   objects to the Court's ruling with respect to that --

```
 1              THE COURT:  That's fine.

 2              MS. FULTON:  -- and the Impact Statement and we may

 3    file papers if we can find some authority to present to the

 4    Court for reconsideration.

 5              THE COURT:  You are welcome to do that.

 6              MS. FULTON:  Thank you, your Honor.

 7              THE COURT:  The hearing will be on the 18th.  She is in

 8    Arizona.  She can fly out there that morning and fly back that

 9    night.  She will be gone for one day.  The effect of waiting

10    until after the 28th of June would be to in effect extend this

11    process yet another two more weeks.  I am not going to do that

12    under these circumstances.  This Defendant has waited long

13    enough for his sentencing in this case.  Anything else for the

14    Government?

15              MR. MOORE:  Did you set the time, your Honor?

16              THE COURT:  3 o'clock on the 18th I think I said.  Let

17    me double-check it.  3 o'clock.

18              MR. MOORE:  Very well, your Honor.

19              MS. FULTON:  Thank you, your Honor.

20              THE COURT:  Any other questions for the Government or

21    for the defense?

22              MR. MOORE:  None from the defense, your Honor.

23              THE COURT: Mr. Penders.

24              PROBATION OFFICER:  No, your Honor.  Thank you.

25              THE COURT:  We will stand in recess.
```

1          (Whereupon, at 3:42 p.m., the proceedings were

2     concluded.)

1                              CERTIFICATE OF REPORTER

2

3              I, Patty A. Gels, certify that the foregoing is a

4       correct transcript from the record of proceedings in the

5       above-entitled matter.

6

7

8

9                                          _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25